**FILED**
**Oct 21, 2020**
**03:44 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **JOSHUA MASK,** | ) | **Docket No. 2019-07-0281** |
| **Employee,** | ) | |
| **v.** | ) | |
| **HILL'S TRUCKING, INC.,** | ) | **State File No. 96546-2016** |
| **Employer,** | ) | |
| **and** | ) | |
| **TECHNOLOGY INS. CO.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

The Court held a Compensation Hearing on September 24, 2020, on Mr. Mask's claim for workers' compensation benefits for a pelvic injury. Hill's Trucking contended Mr. Mask's claim is barred based on willful misrepresentation of his diabetes and/or willful violation of a safety rule. For the reasons below, the Court holds Hill's Trucking did not prevail on its defenses. Thus, Mr. Mask's claim is compensable, and the Court awards him seven-percent permanent partial disability and open future medical benefits.

### History of Claim

Mr. Mask worked as a truck driver for Hill's Trucking. On May 4, 2016, he was traveling home from a second consecutive trip to Arkansas when he crashed his truck. He testified he did not remember how the accident occurred because of a concussion resulting from it. The Highway Patrol's report stated Mr. Mask ran off the road and then overcorrected and overturned the truck. Hill's Trucking did not provide treatment or immediately report the accident to its insurance carrier.

Mr. Mask suffered injuries to his pelvis, hands, and back, and he required emergency treatment. He underwent pelvic surgery.[1] He later saw Dr. Samuel Chung at his attorney's request for an independent medical evaluation. Dr. Chung prepared a report and

---

[1] Mr. Mask did not introduce records of his medical treatment or bills into evidence.

1

Form C-32, concluding that Mr. Mask reached maximum medical improvement on March 7, 2017, and his injuries arose primarily out of the work accident. He did not address Mr. Mask's work status in the C-32. He assigned a seven-percent permanent impairment. Hill's Trucking offered no conflicting expert testimony and stipulated to Dr. Chung's impairment rating if the Court found Mr. Mask had a compensable claim.

*Hearing testimony*
*Mr. Mask*

Mr. Mask testified he was diagnosed with diabetes when he was a teenager, and he started insulin.[2] He stated there have been times when he took pills to manage his diabetes instead of insulin over the years.

Mr. Mask testified he completed a truck driving course and obtained his commercial driver's license (CDL) in 2012. He agreed he was trained to follow Department of Transportation guidelines. During his physical, he told the physician he was a type-two diabetic. He acknowledged on cross-examination that he knew type-one diabetes could preclude him from driving. He testified he started taking pills for his diabetes at the time he obtained his CDL.

Mr. Mask denied knowingly or willfully making false statements to Hill's Trucking regarding his physical condition when he applied for employment in January 2016. He testified he first spoke to Mr. Hill by phone about the job and told him he had diabetes during that conversation. He stated Mr. Hill said he was a diabetic, too, and as long as Mr. Mask knew how to control his condition, "it's ok." Mr. Mask stated he managed his diabetes with pills at the time and was not insulin-dependent. Two days later, he met with Vicky Hill to fill out the application.[3] The application did not request medical information.

Mr. Mask testified to a second conversation he had with Hill's Trucking regarding his diabetes. He stated that after he started working for them, he was not feeling well due to low blood sugar during a trip to Texas, and his mother contacted Mr. or Ms. Hill urgently trying to get help for him. After he returned from the trip, he stated he met with the Hills and discussed his diabetes and that he needed to keep snacks with him in the truck to control it.

On cross-examination, Mr. Mask acknowledged he has "passed out" in the past related to his diabetes, but he denied ever doing so while driving a truck.

---

[2] The evidence contains discrepancies as to whether Mr. Mask is a type-one or type-two diabetic. In Mr. Mask's pre-trial brief, he stated he was type-one diabetic. However, he testified he told the medical provider at his physical that he was a type-two diabetic, and Dr. Chung's record stated he reported he was a type-two diabetic.

[3] Mr. Mask testified he completed the application himself except for the fact that someone else signed his name to the last page entitled "Fit for Duty." Ms. Hill testified she later signed his name to that page.

Mr. Hill owns and operates Hill's Trucking, and his daughter, Vicky, dispatches trucks and handles paperwork and billing. They both testified they comply with Department of Transportation guidelines. Mr. Hill stated he is somewhat familiar with the guidelines. Ms. Hill keeps a copy of DOT guidelines in her office. Hill's Trucking introduced a document entitled "Fleet Safety Compliance Manual," which Ms. Hill testified provides physical qualifications for drivers. The manual requires that drivers have "no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control."

Mr. Hill acknowledged he is diabetic but does not take insulin. He did not recall talking to Mr. Mask about diabetes when he hired him and stated he learned of it after his accident.

Ms. Hill also denied knowledge of Mr. Mask's diabetes until after his accident. They both testified they would not have hired him had they known. Ms. Hill did not recall meeting with Mr. Mask about his diabetes, but she did remember his mother calling them urgently trying to reach Mr. Mask. She stated she did not know the reason and did not ask.

Finally, Ms. Hill testified regarding her conversation with Mr. Mask when they reviewed his application. She discussed the company's expectations regarding punctuality, communication with the office, and customer service. She testified Mr. Mask provided a Medical Examiner's Certificate showing he passed the physical qualifications to drive a truck. (Ex. 6.)

**Findings of Fact and Conclusions of Law**

At a Compensation Hearing, Mr. Mask must establish by a preponderance of the evidence that he is entitled to the requested benefits. *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2019).

The Court first considers Hill's Trucking's central argument that Mr. Mask's claim is barred based on his alleged willful misrepresentation of his diabetes during the application process. In *Federal Copper and Aluminum Company v. Dickey*, 493 S.W.2d 463, 464 (Tenn. 1973), the Tennessee Supreme Court decided that a willful misrepresentation defense existed in workers' compensation cases and adopted the following test for its application:

> (1) The employee must have knowingly and willfully made a false representation as to his physical condition; (2) the employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring; and (3) there must have been a causal connection between

the false representation and the injury.

*Id*. at 465.

Regarding the first and second *Dickey* factors, the Hills testified that Mr. Mask did not disclose he was a diabetic at the time he was hired. They said they would not have hired Mr. Mask had he done so because DOT guidelines in the Fleet Safety Compliance Manual mandate that a driver have "no established medical history or clinical diagnosis of diabetes mellitus *currently requiring insulin for control*."

Mr. Mask countered that the Hills were aware of his diabetes because he discussed it with Mr. Hill in their first call about the job and later in a meeting after he experienced low blood sugar on the road. Mr. Mask further contended he did not require insulin at the time he was hired because he was taking pills.

As to the third prong, the Hills argued they established a connection between Mr. Mask's diabetes and the accident. Mr. Mask disagreed.

The Court holds Hill's Trucking did not satisfy the requirements of its willful misrepresentation defense. Mr. Mask testified without contradiction that he was not insulin-dependent at the time he was hired. He said he took pills to manage his condition at that time. The DOT rule on which the Hills relied in support of their testimony only precludes hiring a driver *currently requiring insulin for control* of his diabetes.

Further, the Court credits Mr. Mask's testimony that the Hills knew of his diabetes at the time he was hired. The fact that Mr. Mask knew that Mr. Hill also had diabetes and gave details of the conversation reasonably supports his version of the call where Mr. Mask and Mr. Hill discussed their diabetes. Further, Ms. Hill recalled Mr. Mask's mother urgently calling to reach Mr. Mask while he was on a trip. The Court finds unconvincing her testimony that Mr. Mask's mother did not tell her why she urgently needed to reach her son and she never asked Mr. Mask's mother about the urgent need for the call.

Lastly, the Hills introduced no medical proof establishing a causal connection between Mr. Mask's diabetes and his injury. The only proof concerning the accident was Mr. Mask's uncontroverted testimony that he could not remember the accident due to a concussion, and the accident report, which showed he ran off the road and overturned the truck. Hill's Trucking argued that because Mr. Mask could not explain the accident and he acknowledged he has "passed out" in the past due to his diabetes, the Court could *presume* Mr. Mask's condition caused the accident and his resulting injuries. The Court declines to speculate as to a causal connection between Mr. Mask's diabetes and his injury. Without proof to satisfy this factor, the willful misrepresentation defense fails.

Hill's Trucking next argued, in general terms, that Mr. Mask's claim for workers'

compensation benefits is barred based on willful misconduct for violation of its safety rules. Under Tennessee Code Annotated 50-6-110(b), the burden of proof falls on Hill's Trucking to establish this affirmative defense. To prevail, it must show: "(1) the Employee's actual, as opposed to constructive, notice of the rule; (2) the Employee's understanding of the danger involved in violating the rule; (3) the Employer's bona fide enforcement of the rule; and (4) the Employee's lack of a valid excuse for violating the rule." Further, before this test becomes applicable, it must be shown there was an actual violation of a rule. *Burnett v. Builders Transp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 5, at *11 (Feb. 8, 2018) ("It stands to reason that the existence of a violation must occur to successfully invoke this defense.").

Hill's Trucking argued in its brief that it required drivers to be physically fit to drive a commercial truck under DOT regulations. It contended Mr. Mask knew of the danger posed by driving a truck "without being physically qualified to do so" from his training course, and that Ms. Hill established the company's bona fide enforcement of the rule by reviewing the application with Mr. Mask and discussing expectations. Finally, Hill's Trucking contended Mr. Mask had no valid excuse for driving a truck when he was not physically qualified to do so.

The Court finds Hill's Trucking's proof insufficient to prevail in this defense because they failed to prove that Mr. Mask violated a rule at the time of the accident. Hill's Trucking's contention appears to be that Mr. Mask violated the rule prohibiting drivers with diabetes requiring insulin from driving. However, there was no proof that Mr. Mask was insulin-dependent at the time of his accident. He testified he took pills to manage his condition when he applied with Hill's Trucking four months before the accident. Yet, he offered no proof regarding his diabetes management at the time of his accident. As stated above, under the rule cited by Hill's Trucking, it was not a violation for Mr. Mask to be driving as a diabetic if he was not "currently requiring insulin for control." This defense must fail.[4]

Even if Hill's Trucking had established a safety rule violation, the Court finds it still cannot prevail in its defense. Specifically, Hill's Trucking did not offer proof as to its bona fide enforcement of its alleged rule against driving with diabetes. It argued Ms. Hill established this element in her testimony regarding reviewing the application with Mr. Mask and discussing the company's "expectations." However, Ms. Hill testified the expectations were for drivers to be punctual, responsive to all calls, and to provide good customer service. This testimony is insufficient to show Hill's Trucking's bona fide

---

[4] The parties testified regarding the time it took Mr. Mask to make two trips to and from Blytheville, Arkansas to pick up the loads before his accident. To the extent that Hill's Trucking contends Mr. Mask violated its safety rules by driving in excess of eleven hours, the Court finds the argument was not made in its brief or at trial and is waived. In its brief, Hill's Trucking safety rule violation argument concerned Mr. Mask's physical condition, and at trial, it contended, generally, that Mr. Mask was guilty of misconduct for violating its safety rules.

enforcement of its safety rules. Thus, the Court holds it cannot prevail in this defense.

*Permanent Disability, Temporary Disability, and Medical Bills*

The Court now turns to Mr. Mask's requested benefits. The Court holds that the preponderance of the evidence showed he sustained an injury arising primarily out of and in the course and scope of his employment on May 4, 2016. By stipulation, Mr. Mask's permanent disability benefits are calculated on a seven-percent impairment rating at the weekly rate of $510.58, or $16,083.27.

To prove entitlement to temporary benefits, Mr. Mask must show (1) he became disabled from working due to a compensable injury, (2) a causal connection between that injury and his inability to work, and (3) the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Dr. Chung marked "na" on the C-32 regarding Mr. Mask's work status, and Mr. Mask introduced no medical proof to satisfy these factors.

Mr. Mask also requested payment of his outstanding medical bills for treatment of his alleged injury. However, he did not introduce any medical records or bills into evidence. For this reason, the Court holds that Mr. Mask did not show that he is entitled to his past medical expenses, and his request is denied. The Court holds, however, that Hill's Trucking must provide future medical benefits for Mr. Mask's compensable injury under the statute.

Finally, the Court holds Mr. Mask's attorney is entitled to a reasonable attorney's fee. The statute provides attorney's fees are reasonable if the fee "does not exceed twenty percent (20%) of the award to the injured worker." Tenn. Code Ann. § 50-6-226(a)(1). Thus, the Court holds his counsel is entitled to a twenty-percent fee from Mr. Mask's award.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Mask shall recover from Hill's Trucking, Inc. permanent partial disability benefits in the amount of $16,083.27.

2. Mr. Mask shall receive future medical benefits under the statute.

3. The Court denies Mr. Mask's claims for temporary disability and past medical benefits.

4. Mr. Mask's attorney is awarded a twenty-percent attorney's fee and any incurred expenses to be paid from Mr. Mask's award.

5. Costs of $150.00 are assessed against Hill's Trucking under Tennessee Compilation

6

Rules and Regulations 0800-02-21-.07 (August, 2019), to be paid within five days of this order becoming final.

6. Hill's Trucking shall prepare and file a statistical data form within ten business days of the date of this order under Tennessee Code Annotated section 50-6-224.

7. Unless appealed, the order shall become final thirty days after issuance.

**ENTERED October 21, 2020.**

_Amber Luttrell_

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Stipulated Findings of Fact**
1. The parties stipulated to Dr. Chung's seven-percent impairment rating.
2. The parties stipulated that Mr. Mask's compensation rate is $510.58.

**Exhibits**
1. First Report of Injury
2. Dr. Chung's C32
3. Driver's Daily Log-May 3, 2016
4. Commercial Driver Application
5. Tennessee Department of Safety Supplemental Application for Commercial Driver's License
6. Medical Examiner's Certificate
7. Fleet Safety Compliance Manual
8. Mississippi Department of Public Safety Driver/Vehicle Examination Report

**Technical Record**
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Order
4. Post-Discovery Dispute Certification Notice
5. Employee's Pre-Compensation Hearing Statement
6. Employee's Witness List
7. Employee's Trial Brief
8. Employer's Pre-Compensation Hearing Statement
9. Employer's Witness List
10. Employer's Exhibit List

11. Employer's Trial Brief
12. Employer's Motion in Limine
13. Employer's Motion to Continue Trial
14. Order Granting Motion to Continue Trial
15. Employee's Motion for Extension of Scheduling Order
16. Employee's Motion to Strike Employer's Motion in Limine and Reply
17. Notice of Appearance and Substitution
18. Order on Pre-Trial Motions

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on October 21, 2020.

| Name | Email | Service sent to: |
|---|---|---|
| J. Colin Morris, Employee's Counsel | X | j.colinmorris@gmail.com |
| Rosalia Fiorello, Employer's Counsel | X | rfiorello@wimberlylawson.com |

_Penny Shrum_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fullycompleted Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____ **Employer**

Notice is given that _____ *[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date filestamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____ issued

by Judge _____.

**Statement of the Issues on Appeal**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:
_____
_____
_____
_____

**Parties**
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee
Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____
*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)** (Opposing Party): _____  ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*___ [Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

LB-1108 (REV 11/15)                                                          RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____)

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

Amount Owed                  To Whom

_____             _____

_____             _____

_____             _____

_____             _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                    RDA 11082